Dear Mr. Falterman:
The questions you asked in your original opinion request were initially addressed by our Opinion No. 91-9. However, in your letter of April 30, 1991, you have narrowed your questions to a specific set of circumstances, which calls for further clarification. As stated in you most recent letter, your question is as follows:
". . . If a Justice of the Peace receives a complaint on a worthless check violation and directs a Constable to collect restitution in lieu of criminal charges along with a `court cost' or `fee' of $40 which is divided between the Justice of the Peace and the Constable, do such collections comprise an illegal use of authority?"
At first impression, it would appear that the scenario you describe could easily be categorized, as a justice of the peace charging for handling a criminal matter. In which case, the justice of the peace's actions would be improper and possibly illegal. However, it is the opinion of this writer that the question you have asked is not so simple as it might first appear.
It should first be observed that while R.S. 16:15 authorizes District Attorneys to collect worthless checks and charge a fee for doing so, neither R.S. 16:15, nor any other provision of which I am aware, prohibits a justice of the peace from handling cases involving worthless checks. They simply have no specific authorization to do so, as do district attorneys. However, if they may do so under any other authority they possess, then they would not need specific authorization. In our previous opinion we stated that a justice of the peace could handle a suit for a debt involving a worthless check, if it were handled as a civil matter. As such the justice of the peace could charge "piecemeal" under R.S. 13:2588, or he could receive security for costs or an advanced costs deposit under R.S. 13:2590. Subsection C(1) of Section 2590 provides that:
"In lieu of the security provided for in Subsection A of this Section, the plaintiff may deposit advanced costs with the justice of the peace."
Subsection C(2)(a) sets the amount of advance deposit for evictions at $40; and Subsection C(20(b) sets the amounts "[I]n all other cases . . . at an amount not more than sixty dollars." Accordingly, if a justice of the peace does not cross the line from a civil to a criminal action, it would seem that he could collect a worthless check debt and charge a fee for it, just as he could any other debt.
The key question becomes at what point does a civil collection suit become a criminal matter. There seems to be authority for the proposition that this does not occur until the justice of the peace accepts charges and issues a warrant. When a justice of the peace comes to the point of issuing a warrant, that is the point at which he would clearly be prohibited from charging any fee. It is also the point at which he could not contact the defendant, directly or through his constable, and even discuss restitution. At that point, the warrant is delivered to the constable or the sheriff for execution.
The difficulty with this situation, as I see it, is presented by the case of In Re Wilkes, 403 So.2d 35, 41. This was a disciplinary action against a justice of the peace, who was found to have committed a number of improprieties. One of the mistakes Judge Wilkes made was the collection of worthless checks on a contingency fee basis. The Judiciary Commission apparently concluded that Mr. Wilkes's collection of worthless checks was a violation of R.S. 13:2586.1 (now R.S. 13:2589). However, the Louisiana Supreme Court declined to address that question directly. The court said at page 41 of the decision:
"With regard to criminal matters, R.S. 13:2586.1 and its predecessors' provisions clearly prohibit justices of the peace from receiving any fees in criminal and peace bond matters other than salaries fixed by governing authorities. Since fee arrangements of the type employed by Judge Wilkes were unlawful regardless of whether the complaints of the witnesses were civil or criminal in nature, this Court need not determine, as the Commission did, that the arrangements were violations of R.S. 13:2586.1.
Of more import to the question you have asked is another statement the Court made in the Wilkes decision. This statement is found in Footnote Number 4, also on page 41 of the decision, wherein the court said:
"The Commission incorrectly assumed that since issuing worthless checks with fraudulent intent is a crime, R.S. 14:71, any fee received for collecting amounts due on an N.S.F. check was necessarily a fee received in connection with a criminal matter. However, there is no indication in the record that criminal charges were pending on any of the collections involved in the charges, or that the actions taken by Judge Wilkes amounted to anything more than attempts to collect amounts due under civil obligations"
One of Judge Wilkes's employees ". . . testified concerning the collection procedure. When a person brought in a bad check, a letter would be sent to the debtor and a copy of the check would be stapled to a carbon copy of the demand letter and retained in a file. When a debtor came in and paid an N.S.F. check, the check would be turned over to the debtor. . . ." The Court did not seem to have a problem with this procedure . What the Court apparently objected to was the judge's retaining a percentage of what he collected. In other words, it appears that the Court objected to the judge charging what amounted to a contingency fee; not to the fact that he charged a fee for collecting on a worthless check.
Judge Wilkes's method of collection does not seem to vary substantially from the procedure set forth in your question, except that in your scenario a constable is sent out to make the demand, rather than a letter.
Accordingly, it would appear that, under the Wilkes decision, so long as no warrant is issued, a justice of the peace could receive a civil complaint on a worthless check, send his constable out (presumably, with some sort of written demand) to collect restitution (probably even in lieu of criminal charges), and collect a civil fee under R.S. 13:2590 (not to exceed $60.00); which fee would be split between the justice of the peace and the constable. In such case, the fee would be due whether the defendant paid or not (i.e. not contingent on collection) and the fee could not be based on or determined by the amount of the debt or the amount collected. It should be remembered that, there being no warrant filed, if the defendant did not choose to make restitution, the plaintiff would apparently still have the option of proceeding to a civil judgment or of abating the civil proceedings and instructing the justice of the peace to issue a warrant. Therefore, the answer to your question appears to be "No", it would not constitute an illegal use of authority. It should be noted, however, that absent the language of the Supreme Court in the Wilkes case, a different conclusion might have been reached.
The difficulty with the foregoing reasoning and conclusion, is that we do not know for certain whether the Supreme Court really meant what it appeared to say or at least imply.
You may be interested to know, that it is our understanding that a justice of the peace is presently in the process of requesting an opinion on this matter, from the Louisiana Judiciary Commission. We have asked the justice of the peace to provide us with a copy of that opinion when it is received. At that time, we will be happy to furnish you with a copy of same, together with a revised Attorney General's Opinion, if one is necessitated by the opinion of the judiciary commission.
I trust that the foregoing adequately answers your most recent inquiry. If, however, additional information is needed, please do not hesitate to contact us.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: JAMES A. SMITH, II Assistant Attorney General
JAS: 2266s